Estate of Wilm: Futterlieb, Executor, Appellant, vs. Wight, guardian *ad litem,* Respondent.

*November 15—December 11, 1923.*

*Wills: Attestation by witnesses in adjoining room: Sufficiency.*

1. Where a testator executed his will in his bedroom, and could not hear ordinary conversations in the kitchen nor see what was being done on the kitchen table from any point in the bedroom, attestation in the kitchen was not within testator's "presence," within the meaning of sec. 2282, Stats.   p. 244.
2. Witnesses to a will must subscribe in a place where the testator, if not blind, may, if he so desires, see them sign; and the statute is not satisfied by the will being brought to the testator after it is subscribed by witnesses in an adjoining room where he cannot see them, though he assents to and approves of the attestation.   p. 243.
3. Where the evidence of the witnesses to the will is produced and shows that attestation was not in testator's presence, the decision of the case must be based thereon, notwithstanding the presumed verity of the attestation clause.   p. 244.

Appeal from a judgment of the county court of Milwaukee county: M. S. Sheridan, Judge. *Affirmed.*

Proceedings for the probate of the will of Charles Wilm, deceased. The testator made his will about 8:30 o'clock a. m. March 14, 1922, and died about 11 o'clock p. m. on the same day. When the will was executed by him and signed by the witnesses he was sitting up in a bed located in the northwest corner of a bedroom about ten feet square. In the center of the south wall was a door leading out into the living room, which was about the size of the bedroom. Near the northwest corner of the living room a door led out to the kitchen. A little west and north of this door and in the center of the kitchen stood a table. After the testator had signed the will sitting up in the bed, the scrivener, Max Gruenwald, took the will and requested a witness, Edward Johnson, who had been standing near the door leading from the bedroom to the living room, to follow him to the kitchen,

which he did.   Here upon the kitchen table the two signed
the will as witnesses.   A third witness, Anton Ernst, came
in later and signed it.

The court found:

"That Max Gruenwald and Edward Johnson signed said
instrument in the presence of each other, but not in the
presence of said Charles Wilm, and that Anton Ernst there-
after signed said instrument, not in the presence of Charles
Wilm, and that he did not see either Max Gruenwald or
Edward Johnson sign said instrument, the same having been
signed by them before his entry into the kitchen, and that
none of the witnesses to said instrument signed said instru-
ment in the presence of the testator, and that neither one
of said witnesses was personally or directly requested to
sign said instrument as a witness by said Charles Wilm, and
that said Charles Wilm did not declare, in the presence of
either Edward Johnson or Anton Ernst, that said instrument
was his last will and testament."

The court denied the probate of the will because it was
not executed in the manner provided by law, and the pro-
ponent appealed.

*Max P. Kufalk* of Milwaukee, for the appellant.

For the respondent there was a brief by *Cannon, Bancroft
& Waldron* of Milwaukee, joined in by *William W. Wight*
of Milwaukee, guardian *ad litem* for *Wilhelmina Wilm;* and
the cause was argued orally by *L. H. Bancroft.*


VINJE, C. J.   The question raised by the appeal is
whether the witnesses, or any of them, signed in the presence
of the testator as required by sec. 2282, Stats.   Were this a
case of first construction of the statute it might well be
that the facts bring the attestation within the statute, giving
to the word "presence" the broad liberal meaning that some
courts have given it.   But our court in an early day in the
case of *Will of Downie,* 42 Wis. 66, decided in 1877, held
that the witnesses must subscribe in a place where the tes-
tator, if not blind, may, if he so desires, see them sign, and

that the statute is not satisfied by the will being brought to the testator after it is subscribed by witnesses in an adjoining room where he cannot see them, though he assents to and approves of the attestation. This rule seems a harsh one, but it is prescribed by the legislature and it must be given the construction that the language naturally requires. An act cannot be said to be done in the presence of another when it is outside of his range of vision and beyond his sense of hearing. Even if the word "presence" is construed to mean within a sphere where the senses of the testator can inform him of the performance of the act, the present case would not come within the statute, for he could neither hear ordinary conversation in the kitchen nor see what was being done on the kitchen table from any point in the bedroom he occupied. It is true the distance from the kitchen table through the wall of the bedroom to the bed was perhaps less than ten feet, but the solid wall prevented both the senses of hearing and seeing from ascertaining what was being done. Of course a man both deaf and blind may make a valid will, because the statutory test of presence is based upon a normal human being. If it is within his presence then it is equally within the presence of a blind or deaf man or one who is both.

When a will for the purpose of attestation is taken to a place where a testator of normal senses, though he desires so to do, cannot by his own act or by the aid of others in moving him either hear what is said or see the execution of the attestation, it must be deemed to be not within his presence. To hold otherwise would be to permit a will to be taken entirely away from the testator for purposes of attestation. It was the purpose of the statute to require the attestation of the witnesses to be in the presence of the testator as the word "presence" is ordinarily used, that is, in a place where the testator can by the use of his senses ascertain what is being done. When the place is beyond the reach of any of his senses it is no longer within his presence. That

it need not necessarily be in, the same room is established by the case of *Will of Meurer,* 44 Wis. 392. The case of *Will of Downie,* 42 Wis. 66, contains a detailed discussion of the reasons for the rule there announced and no re-statement of such reasons will here be made. For. a good dis-cussion of the subject by other courts see *Riggs v. Riggs,* 135 Mass. 238; *Cook v. Winchester,* 81 Mich. 581, 46 N. W. 106, 8 L. R. A. 822, and note.

It is urged that since the attestation clause imports verity and that in the case of the death of the witnesses before probate the presumption that they signed in the presence of the testator would be sufficient to admit the will to probate, it should be admitted under the evidence as it stands. The answer to that is that we must decide the case upon the evi-dence in the record, and not upon evidence as it might have been had it been impossible to secure the evidence of the witnesses to the will.

*By the Court.*—Judgment affirmed.